ARKADELPHIA LUMBER COMPANY *v.* ASMAN.

Opinion delivered November 17, 1900.

CONTRACT OF EMPLOYMENT—TERMINATION.—A contract of employment for a certain salary per month, but not for any definite time, may be terminated at will by either party. (Page 528.)

Appeal from Clark Circuit Court.

JOEL D. CONWAY, Judge.

*J. H. Crawford*, for appellant.

The evidence fails to support the verdict, because it fails to show any mutuality of understanding. 17 Ark. 78; 1 Ark. 415. An indefinite hiring is a hiring at will. 56 Pac. 652; 11 Atl. 176, S. C. 76 Md. 554; 42 N. E. 416, S. C. 148 N. Y. 117; Wood, Mast. and Serv. § 136; 36 Atl. 714, S. C. 19

R. I. 697; 35 Ark. 156; 22 Pac. 1126, S. C. 81 Cal. 596; 48 N. E. 597, S. C. 18 Ind. App. 474.

*Dougald McMillan,* for appellee.

The evidence sustained the verdict. Appellant's failure to introduce its president, who knew all about the actual contract, was to be construed against it. 48 Ark. 497; 33 Ark. 91; 56 Ark. 384. The general course of dealing between parties is competent in proof of their contract. Beach, Cont. §§ 14, 34. The court will not disturb the finding of the jury on disputed questions of fact. 19 Ark. 674; 20 N. W. 878; 49 Ark. 122.

BUNN, C. J. This is a suit for balance of salary claimed to be due, amounting to the sum of $400 and interest. Judgment for plaintiff, and defendant appealed.

The evidence shows that one F. R. Pierce was vice-president of the Arkadelphia Lumber Company up to the first Monday in February, 1897, when he was succeeded by the plaintiff, H. R. Asman. While vice-president, Pierce was agent to sell the product of the mill. He received for his services $2400 per annum. It seems that Asman took the place of Pierce, nothing being said further as to pay or how long the employment should continue. Asman worked for the company one year, and was paid for his services at the rate of $2400 per annum, or $200 per month. He continued in his second year without anything being said farther, and, we infer, continued to be paid monthly at the same rate until in September, 1898, his resignation was demanded on the ground that his services were no longer needed. He did not directly respond to this demand, but sent a blank to the president and principal officer of the company, who had given him the appointment in the first instance, for him, the president, to fill out and return to him, which was done; but Asman declined to sign the form of resignation himself. This correspondence resulted in Asman's absolute refusal to resign, explaining in the meantime his attitude in the matter, so as to relieve himself of the charge of having conceded the right of the defendant company to discharge him. He seems to have been paid up to December, and sued for two months' salary.

The general rule on this subject is that when one is employed to be paid so much per month, the employment is merely at will, or as long as the employee shall work, the stated amount being merely indicative of the rate at which the employee is to be paid for the time he may work. *Wright* v. *Morris*, 15 Ark. 444; *Haney* v. *Caldwell*, 35 *ib.* 156; *Martin* v. *N. Y. Life Ins. Co.*, 148 N. Y. 117, 42 N. E. Rep. 416.

But it is argued, in effect, that the extraneous circumstances in evidence take this case of the general rule, and one of these circumstances is that the employment as agent to sell the product of the mill was, in some way, so intimately connected with the office of vice-president that the time for which this employment ran was the same as the tenure of office of vice-president, which is conceded to be one year. Indeed, this, as a question, was submitted to the jury by the court in the sixth instruction, which reads as follows, viz.: "If you believe that there was no compensation attached to the office of vice-president, he can recover nothing on that score. But if you believe the election of vice-president placed him in a position to manage and conduct the business, and for that he was to receive a salary while vice-president, you may take that into consideration in determining whether that was a matter which fixed the period of his contract. That is to say, if he was employed as vice-president, for which he received no emolument, but by reason of his vice-presidency he was assigned to another position, for which he was to receive $2400 per annum, you can take that fact into consideration in determining whether it was understood between the parties that he was to receive $2400 a year, or $200 per month." That instruction would have been allowable, had there been any evidence to support it. It is true, Asman, while vice-president, was appointed to perform this outside duty, which had no relation to the duties of the vice-presidency, so far as the record shows, and which, in effect, is conceded to be the fact. The vice-president, moreover, was elected by the stockholders at an authorized meeting; whereas we gather that the plaintiff was appointed to sell the products of the mill by the president of the company, who apparently had the general management of the

affairs of the company, and could make this appointment. No rule or by-law is shown by which this agent appointed by the president was to exercise the duties of his agency during the time he should hold the vice-presidential office; or that the agency was a necessary adjunct to the vice-presidential office. In other words, there is nothing shown that Asman was vice-president and *ex-officio* agent to sell the products of the mill. All that is shown is that Pierce, the predecessor of appellee, was the vice-president of the company, and at the same time he was the traveling salesman of the company, and had free transportation from the company to travel in performing the duties of salesman; and that the president and general manager gave Asman Pierce's place as such agent, the company having given him a small amount of stock and elected him vice-president.

The instruction therefore was not supported by the evidence, and was misleading, and therefore erroneous.

For this error, the judgment is reversed, and cause remanded for further proceedings not inconsistently herewith.

We express no further opinion as to the evidence, as the case goes back for re-trial.